IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADA ANGLEMEYER, et al., | : | CIVIL ACTION |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| CRAIG AMMONS, et al., | : | |
| | : | |
| Defendants | : | No. 19-3714 |

# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, the 19 Defendants remaining in this action[1] move the Court to enter judgment in their favor as to the claims against them, and aver as follows:

1. With respect to Plaintiff Ada Anglemeyer's claims against them, based on the evidence of record, with all inferences drawn in her favor,

    a. there is no evidence that any of the Defendants other than Clinton Painter had any contact with Ada Anglemeyer;

    b. no reasonable jury can conclude that Defendant Painter's subjected to her to an objectively unreasonable use of force;

    c. qualified immunity bars the claims against Defendant Painter.

---

[1] The 19 defendants named in the Second Amended Complaint (ECF No. 33) are: Peter Del Gaizo, Matthew Wysocky, Nathan Aukamp, Terrance Merante, Daniel Wilk, David Brodeur, Craig Ammons, Michael Lang, Brian Atkinson, Vincente Lopez, Kevin Ward, Clinton Painter, Mark Benson, Robert McGarvey, Lance Schimp, Brian King, Jason Pelotte, John Chulock, and Matthew Pierotti.

2. With respect to Plaintiff Joseph Kluska's claims against them, based on the evidence of record, with all inferences drawn in his favor,

    a. there is no evidence that any of the Defendants other than Matthew Wysocky had any contact with Joseph Kluska;

    b. qualified immunity bars the claims against Defendant Wysocky.

3. With respect to Plaintiff Richard Anglemeyer's claims against them, based on the evidence of record, with all inferences drawn in his favor,

    a. this evidence fails to identify which of the defendants engaged in the conduct upon which he bases his claims;

    b. qualified immunity precludes these claims because caselaw of this Circuit precludes liability of the Defendants based upon the evidence of record.

4. With respect to Plaintiff Jeffrey Anglemeyer's claims against them, based on the evidence of record, with all inferences drawn in his favor,

    a. this evidence fails to identify which of the defendants engaged in the conduct upon which he bases his claims;

    b. qualified immunity precludes these claims because caselaw of this Circuit precludes liability of the Defendants based upon the evidence of record.

This motion is supported by the attached memorandum of law, statement of undisputed facts and supporting exhibits.

WHEREFORE, the Defendants pray for an order granting judgment in their favor and affording such further relief as is just and proper.

Respectfully submitted,

JOSH SHAPIRO
Attorney General

By:    s/ Kevin Bradford
                                                

Kevin R. Bradford
Senior Deputy Attorney General
Attorney I.D. No. 88576

Office of Attorney General
1600 Arch St., Suite 300
Philadelphia, PA 19103
Phone: (215) 560-2262
Fax:   (717) 772-4526
kbradford@attorneygeneral.gov
Date:  April 12, 2021

Karen M. Romano
Chief Deputy Attorney General
Civil Litigation Section

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADA ANGLEMEYER, <u>et al.</u>, | : | CIVIL ACTION |
| Plaintiffs | : | |
| v. | : | |
| CRAIG AMMONS, <u>et al.</u>, | : | |
| Defendants | : | No. 19-3714 |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

**I.     INTRODUCTION**

This civil action is brought by four related individuals who, along with several other family members, lived in the same house in Wind Gap, PA. They sue 19 Pennsylvania State Police Troopers, who were part of the Special Emergency Response Team tasked with executing a high-risk search warrant at the property. The warrant, obtained by local authorities, was based upon several methamphetamine purchases made at the property. Plaintiffs assert they were subjected to excessive force by the Defendants in violation of the Fourth Amendment. They each bring § 1983 claims against all 19 Defendants, for a total of 76 individual claims.

Discovery is now complete and the testimony and evidence gathered fails to sufficiently establish any of these claims. The Defendants therefore move for summary judgment.

**II.    STATEMENT OF UNDISPUTED FACTS**

In accordance with Court's procedures, the Statement of Undisputed Facts is contained in a separate document simultaneously filed with this motion.

**III.   PROCEDURAL HISTORY**

Plaintiffs, Ada Anglemeyer, Richard Anglemeyer, Jeffrey Anglemeyer, and Joseph Kluska initiated this action on August 16, 2019, filing a complaint that named as defendants

Northampton County and various municipal officials. ECF No.1. On November 26, 2019, Plaintiffs filed the First Amended Complaint, which maintained those defendants and added the Commonwealth of Pennsylvania and the Pennsylvania State Police ("PSP") as defendants. ECF No. 9.

PSP, by and through undersigned counsel, moved to dismiss the claims against it. ECF No. 19. Undersigned counsel thereafter agreed to provide to Plaintiffs' counsel PSP's documentation related to the incident. *See* Plaintiff's Motion for Enlargement of Time (ECF No. 28). After that occurred, Plaintiffs' sought and was granted leave to file the Second Amended Complaint, which brought § 1983 excessive force claims against the current Defendants and removed from the action all previously named defendants and claims. ECF No. 31, 32, 33.

### IV. ARGUMENT

#### A. Standard applicable to motion for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a) (setting forth the legal standard formerly found in Fed.R.Civ.P. 56(c)). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The motion must be granted unless the nonmoving party designates specific facts in discovery materials or affidavits showing a genuine material factual issue that can only be resolved by a trial or unless the law does not support the motion. Id. at 324; Fed.R.Civ.P.

56(e). The court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party. Scott v. Harris, 550 U.S. 372, 378 (2007).[2]

However, a non-moving party may not "rest upon mere allegations, general denials or ... vague statements...." Trap Rock Industries, Inc. v. Local 825, Intern. Union of Operating Engineers, AFL-CIO, 982 F.2d 884, 890 (3d Cir. 1992) (*quoting* Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3rd Cir.), *cert. denied*, 502 U.S. 940 (1991)). Conclusory statements are not facts and cannot create issues of fact. Lujan v. National Wildlife Federation, 497 U.S. 871, 888, 889 (1990). Furthermore, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt to the material facts." Matsushita Indus. Elec. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the non-moving party's evidence "is merely colorable, …or is not significantly probative, ... summary judgment may be granted." Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992) (*quoting* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

### B. Plaintiffs cannot establish that they were subject to excessive force by the Defendants based upon the evidence of record

Plaintiffs' theory of liability is that each of Defendants subjected them to excessive force in violation of the Fourth Amendment. Claims of excessive force by police officers, in the context of an arrest, investigatory stop, or other "seizure," should be analyzed under the Fourth Amendment. Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004) (*citing* Graham v. Connor, 490 U.S. 386, 395 (1989)). A plaintiff must establish that "a seizure occurred and that it was unreasonable." Id. (*quoting* Curley v. Klem, 298 F.3d 271, 279 (3d Cir.2002)). "A seizure

---

[2] The mere existence of an alternate version is not grounds for denial of summary judgment. Saucier v. Katz, 533 U.S. 194, 212 n. 3 (2001), *overruled on other grounds by* Pearson v. Callahan, 129 S.Ct. 808 (2009) ("[d]isputed versions of the facts alone are not enough to warrant denial of summary judgment") (*quoting* Rowland v. Perry, 41 F.3d 167, 174 (4th Cir. 1994)).

occurs '[w]henever an officer restrains the freedom of a person to walk away.' " El v. City of Pittsburgh, 975 F.3d 327, 336 (3d Cir. 2020) (*quoting* Rivas, 365 F.3d at 198). Given the nature of Plaintiffs' claims, Defendants do not dispute that they were subject to a seizure for purposes of this motion. *See* Couden v. Duffy, 446 F.3d 483, 496 (3d Cir. 2006) ("The use of excessive force is itself an unlawful seizure under the Fourth Amendment.") [3]

The issue here is the reasonableness of the force used to effectuate the seizure each of the four Plaintiffs. "When determining the reasonableness of an allegedly excessive use of force, "the standard is whether the police officer's 'actions [were] objectively reasonable in light of the facts and circumstances' ..., regardless of the officer's intent or motivation." El, 975 F.3d at 336 (*quoting* Rivas, 365 F.3d at 198; Graham, 490 U.S. at 397). The reasonableness of a particular use of force must be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation. Id., at 396-97. *See* Abraham v. Raso, 183 F.3d 279, 289 (3d Cir. 1999). "The court should defer to the officer's observations and judgments in reviewing the totality of the circumstances because officers 'draw on their own experiences and specialized training to make inferences from and deductions about the

---

[3] Any challenge to the detention of any of the Plaintiffs is plainly precluded by Supreme Court precedent. As the Court has explained "three important law enforcement interests that, taken together, justify the detention of an occupant who is on the premises during the execution of a search warrant: officer safety, facilitating the completion of the search, and preventing flight." Bailey v. U.S., 568 U.S. 186, 194–95 (2013) (*discussing* Michigan v. Summers, 452 U.S. 692, 701 (1981)). *See also* Baker v. Monroe Tp., 50 F.3d 1186, 1191 (3d Cir.1995) (seizure of the occupant of a house is reasonable during the execution of a search warrant in that house "to protect the police, to prevent flight, and generally to avoid dangerous confusion.") (*citing* Summers, at 692.)

cumulative information available to them that might well elude an untrained person.'" United States v. Focareta, 283 F. App'x 78, 83 (3d Cir. 2008) (*quoting* United States v. Arvizu, 534 U.S. 266, 273 (2002)). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.' " Graham at 396.

Critical to the analysis here, where 19 defendants remain in the action, is the well-established requirement that each "'defendant in a civil rights action must have personal involvement' to be liable" under § 1983. Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) (*quoting* Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). A "plaintiff alleging that one or more officers engaged in unconstitutional conduct must establish the 'personal involvement' of each named defendant to survive summary judgment and take that defendant to trial." Williams v. City of York, Pennsylvania, 967 F.3d 252, 258 (3d Cir. 2020) (*quoting* Jutrowski v. Township of Riverdale, 904 F.3d 280, 285 (3d Cir. 2018)). Liability cannot be based upon an official's mere presence at the scene where an alleged constitutional violation takes place. Id., at 259.

1. **Plaintiff Ada Anglemeyer**

    a. <u>Ada Anglemeyer had no physical contact with any of the Defendants other than Painter</u>

Ada Anglemeyer attributes her injuries to being struck once by something hard that caused her to fall backwards after emerging from her bedroom in the lower level of the home. Anglemeyer Dep. at 63:16-19. Clinton Painter has testified that, while on the lower level, he made contact with a person using his shield causing her to fall backwards. He has since determined that this person is Ada Anglemeyer. Painter Dep. at 29:17-19. Accordingly summary judgment should be granted with respect to Ada Anglemeyer's excessive force claims against the other 18 defendants (if she does not voluntarily withdraw those claims).

> b. <u>The evidence of record cannot establish that Painter's use of force against Ada Anglemeyer was objectively unreasonable</u>

With respect to the Ada Anglemeyer's claim against Painter, the evidence cannot establish that he acted unreasonably in using his shield to get her to the ground given the circumstances he faced and the information he possessed. In conducting this analysis, it is critical to view the situation from the perspective of the officer at the time of the encounter and that information he did not have is simply irrelevant to the analysis.

The information that Painter knew is undisputed. It is captured on the briefing video and in the intelligence brief that immediately preceded the operation. Painter learned that SERT was there to execute a high risk search warrant based on methamphetamine sales that occurred on a detached garage on the property. He learned that eight adults and one 17-year-old may be in the residence. He learned that there were numerous guns inside the residence and that they were "all over the house." State firearm records confirmed several of the residents had purchased guns in the past. He was told these firearms may include an AR-15, a semiautomatic weapon and was shown a picture of one of the residents firing an AR-15. He learned the residents have a history of hostility towards police. He learned that there is an extensive surveillance system (providing advance notification of SERT's arrival). He learned that person who sold the drugs, Mark Anglemeyer, had a lengthy criminal record, including assault and resisting arrest, and details of an incident where he led police on a vehicle pursuit. He learned that another resident, Mark's brother, Jeffrey Anglemeyer, also had an extensive record including firearms violations, assault, resisting arrest and strangulation. He learned that Mark's sister and her husband had criminal histories of simple assault.

Equally important is what he undisputedly did ***not*** know. Painter had no information regarding the layout of the interior, other than it was a split level and there was a pool room and

a game room. He had no information whatsoever as to where in the house any of the expected residents would be located. He did not know if there would be other people in the residence who were not identified in the briefing. He had no information about the particular location of any of the guns, except for a rifle that was seen near the front door a few years prior. Intelligence Brief, p. 1. He did not know if any of the other residents besides Mark Anglemeyer played a role in the drug sales occurring at the property. He was not provided with any information suggesting that any of the residents had any physical limitations.

With this information in hand, he quickly encountered a white female later identified as Ada Anglemeyer. According to Ada Anglemeyer, she had just been awakened by a loud noise and emerged from her bedroom. Ada Anglemeyer Dep. at 63:5-12. Behind her were portions of the house that had yet to be been searched by SERT members. Painter Dep. at 37:3-13. Mark Anglemeyer himself could very well be back there armed with an AR-15 or one of the other weapons in the house.

Meanwhile Painter was viewing an unknown female through a window in his shield in a dark or dimly lit room. Painter Dep. at 29:10-16. He could not tell if this was one of the expected female residents or someone else. Painter Dep. at 29:24-30:17. Painter ordered the woman to get to the ground and she did not comply. When she did not, he approached and forced her to the ground using his shield. This caused her to fall backwards.

Ada Anglemeyer made no attempt to go to the ground because she did not hear any command to do so. She heard nothing other than an initial crash that roused her from her sleep and caused her to venture from her bed to the hallway. Ada Anglemeyer Dep. at 66:7-13. She did not actually see Trooper Painter or anyone at all before she was hit with the shield. Ada Anglemeyer Dep. at 67:16-68:6.

This is not a factual dispute. Painter could have given the commands from behind the shield, while Ada Anglemeyer, who had just awoken moments before, might not have heard them. Indeed she did not even realize there were any police officers in her house until some point after she went to the ground. Ada Anglemeyer Dep. at 67:1-8. Jeffrey Anglemeyer, who was in the same area, heard SERT members saying "get down." Jeffrey Anglemeyer Dep. at 59:4-6.

Using a shield to force an unknown adult resident to the ground is not objectively unreasonable under the circumstances Painter faced. He was there to serve a high-risk warrant. He did not know if the person had or had ready access to a firearm and was not receiving any reaction as he approached. Painter also did not know if someone else was about to emerge from the room behind her. He did not know where the guns were. If bullets suddenly started flying, the safest place for Ada Anglemeyer to be would be the ground.

Meanwhile Painter was holding a shield in one hand and a gun in the other. His only option at that moment was to take her to the ground with his shield.

It is true that Ada Anglemeyer did happen to suffer injuries as a result of that action. Plaintiff will presumably argue that this is sufficient to establish the force was objectively unreasonable. But "showing that a plaintiff was injured is not itself sufficient to hold excessive force was used." Keller v. Crawford, 465 F. Supp. 3d 472, 483 (E.D. Pa. 2020) (*interpreting* Abdullahi v. City of Madison, 423 F.3d 763, 770-71 (7th Cir. 2005); Bornstad v. Honey Brook Twp., 211 F. App'x 118, 123-24 (3d Cir. 2007)).

In summary, Painter's conduct was objectively reasonable in light of what he knew and the situation he faced.

      c.   Qualified immunity precludes Ada Anglemeyer's claims against Painter

Liability based on Painter's use of the shield should also be precluded by qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Pearson v. Callahan, 555 U.S. 223, (2009) (*quoting* Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial.'" Pearson, at 815 (*quoting* Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).

Qualified immunity applies unless both of the following are answered in the affirmative: (1) whether the facts alleged by the plaintiff establish a violation of a constitutional right, and (2) whether the constitutional right at issue was clearly established at the time of the alleged violation. Pearson, at 815–16 (*citing* Saucier v. Katz, 533 U.S. 194, 201 (2001) (holding that courts may address either prong first)). In the context of police conduct, the applicability of qualified immunity hinges on whether a reasonable officer could have believed his actions were lawful, in light of clearly established law and the information the officer possessed. *See* Anderson v. Creighton, 483 U.S. 635, 641 (1987). In other words, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007) (*quoting* Saucier v. Katz, 533 U.S. 194, 201 (2001)). "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." Id. "[Q]ualified immunity operates 'to protect officers from the sometimes hazy border between excessive and acceptable force.'" Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (*quoting* Saucier, 533 U.S. at

206). In short, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Williams v. City of York, Pennsylvania, 967 F.3d 252, 259 (3d Cir. 2020) (*quoting* Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Executing search warrants is dangerous and difficult, *see* Maryland v. Garrison, 480 U.S. 79, 87 (1987), and any individuals on site may be lawfully detained. Bailey, 568 U.S. 186. Caselaw holds that this may be done by immediately forcing unknown individuals to the ground. In Bryant v. City of Philadelphia, 890 F. Supp. 2d 591, 601 (E.D. Pa. 2012), *aff'd* (Mar. 15, 2013), during the execution of a search warrant by a SWAT team, the Court held that pushing an unknown individual to the ground while the defendants secured the residence is not excessive force. Undersigned counsel is unaware of any authority in this Circuit suggesting that the use of a shield to force a person to the ground shifts the situation into unconstitutional territory, especially when the officer is holding a gun in his other hand.

Qualified immunity therefore precludes Ada Anglemeyer's excessive force claim against Painter.[4]

**2. Plaintiff Joseph Kluska**

a. Joseph Kluska had no physical contact with any of the Defendants other than Wysocky

Joseph Kluska attributes his injuries to being moved from his bed to the floor and then from his floor to a chair while flex cuffed. Joseph Kluska Dep. at 48:23-49:7, 52:21-24, 54:12-

---

[4] The assertion of qualified immunity at summary judgment triggers two Third Circuit supervisory rules. Under Grant v. City of Pittsburgh, 98 F.3d 116 (3d Cir. 1996), the Court must "analyze separately, and state findings with respect to, the specific conduct of each [defendant]." Under Forbes v. Township of Lower Merion, 313 F.3d 144 (3d Cir. 2002), the Court must "specify those material facts that are and are not subject to genuine dispute and explain their materiality." Williams v. City of York, Pennsylvania, 967 F.3d 252, 254 (3d Cir. 2020) (stressing the importance of these two supervisory rules)

18. Discovery has confirmed that Matthew Wysocky was the SERT member who engaged in the conduct Joseph Kluska complains about. While Trooper Del Gaizo was in the room at that time, there is no evidence that he was personally involved in the movement of Kluska from the bed to the floor and then from the floor to the chair. As Joseph Kluska himself testified, he did not belie that Del Gaizo ad any physical contact with him. Accordingly summary judgment should be granted with respect to Ada Anglemeyer's excessive force claims against the other 18 defendants (if he does not voluntarily withdraw those claims).

> b. Qualified immunity precludes Joseph Kluska's excessive force claim against Wysocky[5]

Joseph Kluska's claim against Wysocky is barred by qualified immunity. The clearly established prong applies if it is not clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

Wysocky had the same information – and lack of information – as Painter, described above. He was entering a dangerous, uncertain situation. It was imperative to get all of the residents under control as quickly as possible. Wysocky was told there were guns all over the house. He found himself in a room with a gun visible and within reach of an unknown individual. The individual was clothed (Joseph Kluska Dep. at 54:19-21), which meant he could be concealing additional weapons on his person. In his urgency to search him for weapons after he was flex cuffed, Wysocky immediately moved the male to the floor. Construing the facts in favor of Joseph Kluska, Wysocky did so in a fashion that injured Kluska's shoulders.

---

[5] In conducting the two-step qualified immunity test, the Court has the discretion to proceed directly to the second, "clearly-established" prong and bypass the first prong - whether there is a constitutional violation to begin with. Pearson, 555 U.S. 223, 236. Given the facts of record and the deference given to the non-moving party at summary judgement, for purposes of this motion Wysocky argues only that the "clearly established" prong triggers the application of qualified immunity.

The law certainly did not preclude Wysocky from moving an unknown and unsearched individual from the bed to the floor and then to the chair in the middle of a search warrant. The issue here is whether the manner by which he moved him was so unreasonable under the circumstances that no objectively reasonable officer would find it reasonable.  It is not.  While Wysocky's technique may have not perfect, this is the type of scenario qualified immunity is designed for. "The purpose of the step two inquiry [of qualified immunity] is to acknowledge the reality that 'reasonable mistakes can be made as to the legal constraints on particular police conduct.'" Santini v. Fuentes, 795 F.3d 410, 418 (3d Cir. 2015) (*quoting* Curley v. Klem, 499 F.3d 199, 207 (3d Cir.2007).  The interaction between Wysocky and Joseph Kluska is the "kind of hazy predicament meant to invoke the protections of qualified immunity." Clifton v. Borough of Eddystone, 824 F. Supp. 2d 617, 630 (E.D. Pa. 2011) "Although the case law is replete with examples probing the boundaries of excessive force, there is no bright line between acceptable and excessive use of force." Id. Qualified immunity "gives ample room for mistaken judgments." Egolf v. Witmer, 526 F.3d 104, 110–11 (3d Cir. 2008) (*quoting* Gilles v. Davis, 427 F.3d 197, 203 (3d Cir.2005)).

For the foregoing reasons, qualified immunity bars Joseph Kluska's claims against Wysocky.

### 3. Plaintiff Richard Anglemeyer

a. Richard Anglemeyer's claims cannot proceed because the evidence of record fails to identify which of the defendants engaged in the conduct upon he bases his claims

Richard Anglemeyer testified that, 10 to 12 minutes after the SERT members initially entered and after at least one of the NCDTF investigators had entered, two SERT members, one of whom was holding a flashlight, suddenly approached him.  Without saying a word, one of

these two SERT members then grabbed him by the neck, hit him with something hard, which caused him to briefly lose consciousness. Richard Anglemeyer Dep. at 30:24-31:4, 32:14-19, 34:22-36:16.  Richard Anglemeyer's claim are based on this event.

The evidence of record fails to establish which of the 19 defendants was the one involved in the encounter with Richard Anglemeyer that he describes.  This remains the case despite the extensive discovery conducted in this matter.  As recent Third Circuit jurisprudence has reinforced, this means the claims brought by Richard Anglemeyer cannot proceed to trial.

In <u>Jutrowski v. Twp. of Riverdale</u>, 904 F.3d 280, 291 (3d Cir. 2018), the plaintiff, Jutrowski, brought excessive force claims based upon a roadside incident where he alleged he was kicked in the face by one of the officers present.  Four of them were each named as defendants in his lawsuit. While discovery established that Jutrowski suffered serious injuries to his face and the four defendant officers were in the vicinity at the time the alleged kick happened, the discovery process did not determine which of the four officers did it.  Because Jutrowski was unable to produce evidence as to which of the four defendants kicked him, the District Court granted summary judgment to the four defendant officers on the excessive force claim.

The Third Circuit affirmed, emphasizing the well-established personal involvement requirement in § 1983 claims.  Each officer "is only liable for his or her *own* misconduct;" liability does not attach because they "happen[ed] to be in the immediate vicinity" of a constitutional violation, even if committed by a member of his or her "cohort."  <u>Id.</u> at 290 (citing <u>Iqbal</u>, 556 U.S. at 677; <u>Anela v. City of Wildwood</u>, 790 F.2d 1063, 1067–68 (3d Cir. 1986)) (emphasis added in <u>Jutrowski</u>). Accordingly, "in the face of motion for summary judgment, a § 1983 plaintiff must produce evidence supporting each individual defendant's personal

involvement in the alleged violation to bring that defendant to trial." Id. at 291. Even narrowing the number of potential actors to two, does not allow the plaintiff to proceed to trial against both defendants.

More recently, in Williams v. City of York, Pennsylvania, 967 F.3d 252 (3d Cir. 2020), the Third Circuit reversed the District Court's denial of summary judgment because the record failed to establish which officer committed the excessive force at issue. As the Court noted, "Jutrowski's central tenet—that 'a defendant's § 1983 liability must be predicated on his direct and personal involvement in the alleged violation' —is 'manifest in our excessive force jurisprudence.'" Id. at 261 (*citing* 904 F.3d at 289). Plaintiff's testimony about what unidentified officers did to her is insufficient to survive summary judgement. Id. at 262.

Because it cannot be determined which of the defendants engaged in the conduct he described, Richard Anglemeyer's claims cannot proceed to trial and summary judgement motion should be granted to the defendants as to those claims.

> b. Qualified immunity precludes Richard Anglemeyer's claims against the defendants given the facts of record and the caselaw of this Circuit

Qualified immunity also precludes Richard Anglemeyer's claims against each of the 19 defendants. "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Pearson, 555 U.S. at 231(*quoting* Groh v. Ramirez, 540 U.S. 551, 567 (2004) (KENNEDY, J., dissenting)). It is not clearly established that a defendant can be liable for excessive force where the evidence establishes, at most, the defendant was in the vicinity of the alleged excessive force and does not show that the defendant was personally responsible for the force at issue. The caselaw in this Circuit, as explained under the previous

subheading, holds just the opposite. Accordingly, qualified immunity precludes Richard Anglemeyer's claims against the 19 defendants.

### 4. Plaintiff Jeffrey Anglemeyer

a. <u>Jeffrey Anglemeyer's claims cannot proceed because the evidence of record fails to identify which of the defendants engaged in the conduct upon he bases his claims</u>

Jeffrey Anglemeyer's claims must fail for the same reasons that Richard Anglemeyer's claims are not viable. Jeffrey Anglemeyer testified that he was on the lower level when the noise of the SERT members entering woke him. Jeffrey Anglemeyer Dep. at 45:7-46:11. He walked into the kitchen where an unidentified officer suddenly "clothes-lined" him behind his head and pushed him to the ground. Jeffrey Anglemeyer Dep. at 45:15-46:1. While on his hands and knees, the same unidentified officer using his boot struck the back of Jeffrey Anglemeyer's neck, forcing him to the ground. Jeffrey Anglemeyer Dep. at 46:6-19. The same officer then flex cuffed him, yanked him up and placed him in a chair. Jeffrey Anglemeyer Dep. at 46:19-47:3. The same officer then slapped him in the head three times. Jeffrey Anglemeyer Dep. at 67:1-68:11.

Jeffrey Anglemeyer described this officer who did all of things to him as wearing a uniform that was brown or gray or green and different than the other two officers he saw, who were wearing "riot" gear that was black. Jeffrey Anglemeyer Dep. at 57:3-58:6, 60:8-21. Jeffrey Anglemeyer testified that he asked the officer what his name was and he responded "Tanya." Jeffrey Anglemeyer Dep. at 61:7-8.

Again, despite the extensive discovery conducted, the evidence of record fails to establish which of the 19 defendants was the officer Jeffrey Anglemeyer describes. Under the caselaw of this Circuit, (<u>Jutrowski v. Twp. of Riverdale</u>, 904 F.3d 280, 291 (3d Cir. 2018); <u>Williams v. City</u>

of York, Pennsylvania, 967 F.3d 252 (3d Cir. 2020), described above), Jeffrey Anglemeyer's claims cannot proceed to trial and defendants' motion for summary judgment should be granted as to those claims.

      b. <u>Qualified immunity precludes Jeffrey Anglemeyer's claims against the defendants given the facts of record and the caselaw of this Circuit</u>

As with Richard Anglemeyer's claims, qualified immunity is an additional barrier to Jeffrey Anglemeyer's claims. It is not clearly established that a defendant can be liable for excessive force where the evidence shows, at most, the defendant was in the vicinity of the alleged excessive force and does not show that the defendant was personally responsible for the force at issue. Accordingly, qualified immunity precludes Jeffrey Anglemeyer's claims against the 19 defendants.

## V.   CONCLUSION

For the foregoing reasons, judgment in this matter should be entered in favor of the Defendants as a matter of law, pursuant to Fed.R.Civ.P. 56.

              Respectfully submitted,

              JOSH SHAPIRO
              Attorney General

      By:    s/ Kevin Bradford

              Kevin R. Bradford
Office of Attorney General      Senior Deputy Attorney General
1600 Arch St., Suite 300         Attorney I.D. No. 88576
Philadelphia, PA 19103
Phone: (215) 560-2262          Karen M. Romano
Fax:   (717) 772-4526           Chief Deputy Attorney General
kbradford@attorneygeneral.gov  Civil Litigation Section

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADA ANGLEMEYER, et al., | : | CIVIL ACTION |
| Plaintiffs | : | |
| v. | : | |
| CRAIG AMMONS, et al., | : | |
| Defendants | : | No. 19-3714 |

## CERTIFICATE OF SERVICE

I, Kevin R. Bradford, hereby certify that the Motion for Summary Judgment has been filed electronically on April 12, 2021 and is available for viewing and downloading from the Court's Electronic Case Filing System ("ECF"). The following parties are listed as ECF Filing Users and are therefore automatically served by electronic means:

- **BRIAN J. ZEIGER**
  zeiger@levinzeiger.com,kimberly@levinzeiger.com,dominique@levinzeiger.com,jenny@levinzeiger.com,amanda@levinzeiger.com

By:   s/ Kevin Bradford

Kevin R. Bradford
Senior Deputy Attorney General
Attorney I.D. No. 88576

Office of Attorney General
1600 Arch St., Suite 300
Philadelphia, PA 19103
Phone: (215) 560-2262
Fax:    (717) 772-4526
kbradford@attorneygeneral.gov