**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ADA ANGLEMEYER, et al.          :      Civil Action No. 19-3714

                              :

             v.             :      Jury Trial Demanded

                              :

NORTHAMPTON COUNTY, et al.      :

                              :

      AND NOW, this _____ day of _____, 2021, Defendants' Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 is GRANTED IN PART and DENIED IN PART.

      Defendants' Motion for Summary Judgement is DENIED in regard to Defendants, Benson, Lopez, McGarvey, Painter, Schimp, and Wysocky.

      Defendants' Motion for Summary Judgement is GRANTED in regard to all other Defendants.


                                     _____

                                     **Younge, J.**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ADA ANGLEMEYER, et al. | : | Civil Action No. 19-3714 |
| | : | |
| v. | : | Jury Trial Demanded |
| | : | |
| NORTHAMPTON COUNTY, et al. | : | |
| | : | |

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR**

**SUMMARY JUDGMENT**

---

<u>May 10, 2021</u>
DATE

BRIAN J. ZEIGER, ESQ.
**LEVIN & ZEIGER, LLP**
TWO PENN CENTER
1500 JFK BLVD STE 620
PHILADELPHIA, PA 19102
215-825-5183
zeiger@levinzeiger.com
PA Bar Id. No. 87063

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ADA ANGLEMEYER, et al. | : | Civil Action No. 19-3714 |
| | : | |
| v. | : | Jury Trial Demanded |
| | : | |
| NORTHAMPTON COUNTY, et al. | : | |
| | : | |

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ....................................................................................................... ii

**I. INTRODUCTION** .................................................................................................................1

**II. BRIEF FACTUAL SUMMARY** .......................................................................................2

    A. Specific Facts from the Record.......................................................................................2
    B. Factual Inferences to the Non-Moving Party.................................................................4

**III. ARGUEMENT** ..................................................................................................................8

    A. Standard of Review.........................................................................................................8
    B. Qualified Immunity.........................................................................................................9
    C. The "Personal Involvement" Requirement – Plaintiffs Richard Anglemeyer And Jeffrey
    Anglemeyer .......................................................................................................................18
    D. Due Process Access To Courts .....................................................................................20

**IV. CONCLUSION**.................................................................................................................23

**EXHIBIT A** - Declaration of Pennsylvania State Police In Response to Plaintiffs' Rule 30(b)(6)
Deposition Notice to Pennsylvania State Police

**EXHIBIT B** - Expert Report of Dr. Robert Sing - Ada Anglemeyer

**EXHIBIT C** - Expert Report of Dr. Robert Sing - Joseph Kluska

**EXHIBIT D** - Expert Report of Dr. Robert Sing - Richard Anglemeyer

**EXHIBIT E** - Expert Report of Dr. Robert Sing - Jeffrey Anglemeyer

**EXHIBIT F** - Expert Report of Joseph Pollini - Police Liability Expert

**EXHIBIT G** - Deposition of Ada Anglemeyer

**EXHIBIT H** - Deposition of Joseph Kluska

**EXHIBIT I** - Deposition of Richard Anglemeyer

**EXHIBIT J** - Deposition of Jeffrey Anglemeyer

**EXHIBIT K** - Mark Anglemeyer Criminal Docket Sheet

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ADA ANGLEMEYER, et al. | : | Civil Action No. 19-3714 |
| | : | |
| v. | : | Jury Trial Demanded |
| | : | |
| NORTHAMPTON COUNTY, et al. | : | |
| | : | |

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970) ........................................................23

*Anderson v. Creighton*, 483 U.S. 635, 640, (1987) .....................................................................10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)......................................................8-9

*Anela v. City of Wildwood*, 790 F.2d 1063, 1067–68 (3d Cir. 1986) ..........................................20

*Ashcroft v. al-Kidd*, 563 U.S. 731, 739 (2011) ...........................................................................12

*Ashcroft v. Iqbal*, 556 U.S. 662, 676 ...........................................................................................20

*Baird v. Renbarger*, 576 F.3d 340, 344 (7th Cir. 2009) ..............................................................15

*Bell v. City of Milwaukee*, 746 F.2d 1205, 1256 (7th Cir. 1984)..................................................25

*Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 535 (3d Cir. 2007) ..............................9

*Brown v. Cwynar*, 484 F. App'x 676, 677 (3d Cir. 2012).............................................................11

*Burchett v. Kiefer*, 310 F.3d 937 (6th Cir. 2002)..........................................................................14

*Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184-85 (3d Cir. 2009)..............................24

*Carswell v. Borough of Homestead*, 381 F.3d at 240 (3d Cir. 2004) ...........................................13

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).......................................................................8

*Couden v. Duffy*, 446 F.3d 483 (3d Cir. 2006) .................................................................. 11, 13-14

*Doe v. Groody*, 361 F.3d 232, 243 (3d Cir. 2004).......................................................................11

*Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1053 (9th Cir. 2003)............15

*Estate of Smith v. Marasco,* 430 F.3d 140, 150 (3d Cir.2005).....................................................13

*Graham v. Connor,* 490 U.S. 386, 395–96, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ................10

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 161 (3d Cir. 2010) .......23

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982)........................................................................10

*Ikerd v. Blair*, 101 F.3d 430 (5th Cir. 1996)................................................................................14

*Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ..............................................20

*Kedra v. Shroewter*, 876 F.3d 424, 444 (3d Cir. 2017)................................................................25

*Kopec v, Tate,* 361 F.3d at 776–77(3d Cir. 2004) .......................................................................10

*Kost v. Kozakiewiecz*, 1 F.3d 176, 185 (3d Cir. 1993)..................................................................25

*Marino v. Indus. Crafting Co.*, 358 F.3d 241, 247 (3d Cir. 2004) .................................................9

*McDonald by McDonald v. Haskins*, 966 F.2d 292, 295 (7th Cir. 1992) .....................................15

*McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001)...........................................................10

*Merklin v. United States*, 788 F.2d 172, 175 (3d Cir. 1986) ........................................................20

*Mlodzinski v. Lewis*, 648 F.3d 24 (1st Cir. 2011)........................................................................14

*Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008)....................................................................23

*Montone v. City of Jersey City*, 709 F.3d 181, 191 (3d Cir. 2013)................................................9

*Patrick v. Moorman*, 536 F. App'x 255, 258–59 (3d Cir. 2013) ................................................11

*Rizzo v. Goode*, 423 U.S. 362, 376–77 ......................................................................................20

*Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005)..............................................................................25

*Sharrar v. Felsing,* 128 F.3d 810, 822 (3d Cir.1997)....................................................... 10, 12-13

*Smith v. Marasco*, 430 F.3d 140, 150 (3d Cir. 2005) ..................................................................17

*Smith v. Mensinger*, 293 F.3d 641 (3d Cir. 2002) ......................................................................20

*Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008)............................................25

*Swiggett v. Upper Merion Twp.*, No. 08-2604, 2008 WL 4916039, at 4 (E.D. Pa. Nov. 17, 2008).
....................................................................................................................................................24

*Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) ....................................... 8-9, 21

*Vasquez v. Hernandez*, 60 F.3d 325, 328-29 (7th Cir. 1995)......................................................24

*Wolff v. McDonnell*, 418 U.S. 539, 579 (1974) ..........................................................................23

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ADA ANGLEMEYER, et al. | : | Civil Action No. 19-3714 |
| | : | |
| v. | : | Jury Trial Demanded |
| | : | |
| NORTHAMPTON COUNTY, et al. | : | |
| | : | |

**BRIEF IN OPPOSITION**

Plaintiffs comes now, by and through undersigned counsel, and in opposition to

Defendants' Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 and respond as

follows:

## I. INTRODUCTION

Four Plaintiffs, Ada Anglemeyer, Jospeh Kluska, Richard Anglemeyer, and Jeffrey

Anglemeyer brought an action against Defendants for one count of a violation of 42 U.S.C. §

1983 for generally violating their civil rights; and, one count of excessive force. The Plaintiffs

were seriously injured by the actions of the Defendants. Instead of accepting responsibility for

their actions, the Defendants come now and ask this Court to dismiss the matter. The Defendants

moved for summary judgement based on two separate theories: (1) all of the Defendants have

qualified immunity; and (2) two of the four Plaintiffs have not made specific identifications of

which Defendants used excessive force again them, so those two Plaintiffs' suits should be

dismissed.

The Defendants are incorrect in both of their arguments and the matter should go to trial.[1]

The Defendants do not have qualified immunity because the Defendants used excessive force

---

[1] Plaintiffs are moving against Defendants Benson, Lopez, McGarvey, Painter, Schimp, and Wysocky. Plaintiff agrees all other Defendants should be dismissed from the matter.

and knew of the prohibition of using excessive force. Also, the record is clear the Defendants were personally involved in a constitutional violation, and, have therefore been identified by Plaintiffs.

## II. BRIEF FACTUAL SUMMARY

### A. Specific Facts from the Record

Local police in Northampton County wrongly believed Mark Anglemeyer was selling methamphetamine from a garage-like building on a parcel of land located at 340 Allentown Road, Bangor Township, PA on February 23, 2018. (Exhibit G - Dep. Ada Anglemeyer 12:20-14:15). The local police called the Pennsylvania State Police's Special Emergency Response Team (hereinafter "SERT") to execute a search warrant on the related to the distribution of methamphetamine. (Defendant Exhibit 5 - Dep. Rowlands 7:8-12, 29:1-9). No allegation was ever made that any methamphetamine was being manufactured or distributed from any other building on the property, or that any other individual other than Mark Anglemeyer was manufacturing or distributing methamphetamine. (Defendant Exhibit 5 - Dep. Rowlands at 7:7-12, 29:7-12).

Nonetheless, at the time of the execution of the warrant the SERT team decided on their own volition to take down the entire parcel of land at one time. (*See* Defendants' Exhibit 15, Warrant Service Plan). The parcel of land is huge and the buildings are not near each other. (*See* Defendants Exhibit 13, ecf# 49-16, overhead photograph of a portion of the parcel of land). The overhead photograph shows the home in green and the trailer/garage area in red. *Id.* The home is on the other side of a massive driveway and down the way; nowhere near the trailer/garage area. *Id.*

Nonetheless, the SERT team sent *43 troopers* onto the parcel in three separate forces *simultaneously*: 18 troopers in the house, 10 troopers to the garage, and 15 troopers outside of the buildings. Of the 43 troopers present on the scene, 21 troopers were armed with M4 assault rifles; and, all of the troopers were equipped with various other deadly weapons. (*See* Defendants' Exhibit 15, Warrant Service Plan). Just before daybreak the SERT team executed the warrant, like gestapo—fully covering their faces with no name or badge number on their uniforms. (Exhibit A – Declaration of PSP in Response to Plaintiffs' Rule 30(b)(6) Notice). 18 troopers simultaneously entered the home. In a matter of minutes these troopers all raided the building. During the takedown of the house, the remaining Defendants injured the four innocent bystander Plaintiffs (*See* Plaintiff's Exhibits B, C, D, and E, Dr. Robert Sing reports). The Defendants all had their faces completely covered, and had no identifying markings embroidered on their uniforms like names and badge numbers. (Exhibit A – Declaration of PSP in Response to Plaintiffs' Rule 30(b)(6) Notice). The Defendants admit they intentionally concealed their identities when the entered the home. *Id*.

Defendant Painter jammed seventy-six year old Plaintiff Ada Anglemeyer into a wall, lifted her off the ground with a ballistic shield, then dropped her to the floor. (Exhibit G - Ada Anglemeyer Deposition, p. 67, ln. 12). Ada suffered two fractured teeth—the upper frontal incisors, a compression fracture to her L2 vertebra, aggravation of degenerative disc and joint disease of the lumbosacral spine, a left gluteal hematoma; and posttraumatic right cubital tunnel syndrome that required post cubital tunnel decompression surgery. (Exhibit B – Report of Dr. Robert Sing regarding Ada Anglemeyer).

Forty-four-year-old Plaintiff Joseph Kluska was asleep in bed when Defendant Wysocky zip tied Joseph from behind and vertically lifted him out of bed by the zip tie and dropped him to

the ground. Joseph suffered tears in both shoulders, and later had left rotator cuff surgery (Exhibit H - Kluska Dep. 73:1-20). More specifically Plaintiff Joseph Kluska suffered acute complete right subscapularis tendon rupture (rotator cuff tear) that required and an arthroscopic rotator cuff repair, a left shoulder rotator cuff tear with associated labral tears, and aggravation of degenerative joint disease, in both shoulder, with the right greater than the left. (Exhibit C – Report of Dr. Robert Sing regarding Joseph Klusha).

**B. Factual Inferences to the Non-Moving Party**

Defendants McGarvey, Benson, and Lopez threw Fifty-five-year-old Jeffrey Anglemeyer to the ground, stomped his the neck, set him in a chair, cuffed him behind his back, and repeatedly slapped him in the face. (Exhibit J - Jeffrey Anglemeyer Dep. p. 85 ln. 2, p. 86. ln. 6). He suffered aggravation of degenerative disc and joint disease of the cervical spine, posttraumatic bilateral vertical radiculopathy, status post caudal epidural steroid injection (CESI x4), cervicogenic headaches, cervical myofascial pain syndrome, bilateral shoulder sprains, posttraumatic left shoulder impingement syndrome, and Post Traumatic Stress Disorder. (Exhibit J - Jeffrey Anglemeyer Dep. p. 85 ln. 2, p. 86. ln. 6) (Exhibit E – Report of Dr. Robert Sing regarding Jeffrey Anglemeyer).

Defendant McGarvey admitted at his deposition he struck a middle-aged male who was in the house at the time of the execution of the warrant. (Defendant Exhibit 9 - McGarvey Dep. p.8 ln. 12). Further, Defendant McGarvey admitted he struck the male, "I used my shield to take this individual to the ground, to control, slash, gain compliance and secure this individual." (Defendant Exhibit 9 - McGarvey Dep. p. 15 ln. 8). "So I used my shield to get him on the ground to control him." (Defendant Exhibit 9 - McGarvey Dep. p. 38, ln. 8). This person was obviously Jeffrey Anglemeyer. Recall, Jeffrey Anglemeyer is 55 years old and Richard

4

Anglemeyer is 77 years old. *See supra*. McGarvey admitted the man he tackled to the ground

was not a senior citizen.

> A. It was an adult aged male that I ·remember during the incident.
> Q. Not a senior citizen?
> A. No.

(Defendant Exhibit 9 - McGarvey Dep., p. 9, ln. 1.)

> Q. Do you think the male could have been in their forties that you had contact with?
> A. When you use the term senior citizen, I'm like no.· But -- but I don't know, older male, like not senior citizen age.

(Defendant Exhibit 9 - McGarvey Dep., p. 26, ln. 12.)

Defendant Benson admitted to having contact with Jeffrey Anglemeyer and Richard

Anglemeyer.

> Upon arrival announcements were made prior to the sliding glass door being breached. When entry was made I observed a W/N-M subject and commands were given to him. At which point he turned around and began walking into an adjacent room. As we made our way into through I encountered another W/N-M subject, who did not comply with commands to get on the ground. I assisted with securing that W/N-M and remained with that subject while the rest of the residence was cleared by the team.

(Defendant Exhibit 21, ecf 49-24, callout report of Defendant Benson)

Defendant Lopez admitted to having contact with Jeffrey Anglemeyer.

> Upon arriving on scene, I deployed with my team to the 4 side of the residence. Upon announcement given, I made entry by performing a brake and rake to the 4 side patio door. On entry, I assisted in clearing the residence, 1st floor, and secured flex cuffs 1 W/N/M in the 1st floor living room.

(Defendant Exhibit 25, ecf 49-28, callout report of Defendant Lopez.)

These facts are corroborated by the callout report of Defendant Schimp.

> [A]s we entered the structure behind Trp. Quinton Painter and Trp. Mark Benson a male was encountered. Commands were given for him to stop and get on the ground. He refused that order and turned around and walked around a corner into the next room. Myself and Tpr. McGarvey followed him into that room where Tpr. McGarvey had to physically take him to the ground while Tpr.

Benson was dealing with another male who was not complying with commands. Tpr. Painter and myself turned our attention to several doors one of which was open and lead into a room with several doors.

(Defendant Exhibit 9, callout report Defendant Schimp.)

Defendant Schimp's report is most informative. Schimp admits he was with Plaintiff Jeffrey Anglemeyer. We know from McGarvey's testimony that he struck Plaintiff Jeffrey Anglemeyer, and therefore Schimp was aiding McGarvey when he struck Jeffrey Anglemeyer. Further, Schimp left the scene to accompany Defendant Painter. (*See* Defendant Exhibit 9 - McGarvey Dep; *See* Defendant Exhibit 9, Schimp callout report). Therefore, when McGarvey said he turned over the subject for someone else to cuff him, that person was Defendant Lopez, who Plaintiff Jeffrey Anglemeyer claimed kept slapping him while he was in the process of being zip tied. (Defendant Exhibit 25, ecf 49-28, callout report of Defendant Lopez.) And, therefore, by the process of elimination, Defendant Benson was the person who assaulted and tore the knee of 77-year-old Plaintiff Richard Anglemeyer. (Defendant Exhibit 21, ecf 49-24, callout report of Defendant Benson).

Defendant Benson, grabbed seventy-seven-year-old Plaintiff Richard Anglemeyer by the neck and struck him with something that caused him to lose consciousness by. He suffered complete tears of both the medial and a lateral menisci of the right knee, a contusion of the right knee, facial abrasions, contusions and hematomas of the neck, and Post Traumatic Stress Disorder. (Exhibit I - Richard Anglemeyer Dep. at 49:4-49:15) (Exhibit D – Report of Dr. Robert Sing regarding Richard Anglemeyer).

The actions, as reported by McGarvey, Schimp, Lopez and Benson, are corroborated by Plaintiff's Jeffrey Anglemeyer and Richard Anglemeyer.

A. Okay. I'm standing by the fireplace, and then people were running round, you know, the cops, now that I know they're cops. They were running all around, and I just stood at

the fireplace. And then a cop come in, two cops come in, stood in front of me with a bright light and, you know, moved it back and forth like this here (indicating), and then I got blinded. I couldn't follow it no more. And the next thing I know, I got hit, you know, in the face and stuff.

Q. Okay.

A. And I felt -- and like at the throat here, and then I knew I was going down, and I went down and hit the concrete, and that's all I can remember for a while.

(Exhibit I - Deposition of Richard Anglemeyer, p. 25, ln. 2).

He yelled, get down, and he grabbed -- he like clothes-lined me behind my head and threw me down on my hands and knees.

And when I said that, he said, shut up, and he took his boot on the back of my neck and he slammed me to the floor on my knees to flat on my thing, and that's when he hurt my neck.

He slapped me once in the jaw, and that's when I felt the shooting pain in my neck, and I dumped my head down and then he was punching me with open hands. These were not punches. They were open hands across the top of my head.

(Exhibit J - Jeffrey Anglemeyer Deposition p. 51, ln. 24).

He slapped me once in the jaw, and that's when I felt the shooting pain in my neck, and I dumped my head down and then he was punching me with open hands. These were not punches. They were open hands across the top of my head.

(Exhibit J - Jeffrey Anglemeyer Deposition p. 62, ln. 7).

Also the Defendants all covered their faces at the time they entered the property and did not have any identifying markers on their uniform such as their names and badge numbers.

(Exhibit A – Declaration of PSP in Response to Plaintiffs' Rule 30(b)(6) Notice). Further, when pressed on the policy regarding hiding their identity, the Defendants offered a statement saying they have no policy—they all agree to hide their identity like storm troopers. (Exhibit A – Declaration of PSP in Response to Plaintiffs' Rule 30(b)(6) Notice).

During the takedown of the entire parcel of land, the police did not recover any methamphetamine from any building or any individual during the takedown of the entire parcel of land. (*See* Defendant Exhibit 9 - McGarvey Dep., p. 90-92). Mark Anglemeyer who was the

7

subject of the narcotics investigation is not a Plaintiff in the instant action. Further, Mark

Anglemeyer was not convicted of any crime in relation to the manufacture and distribution of

methamphetamine in relation to the instant matter. (Exhibit K – Mark Anglemeyer Criminal

Docket Sheet). None of the Plaintiffs were accused, prosecuted, or convicted of any crime

related to methamphetamine. (*See* Defendant Exhibit 9 - McGarvey Dep., p. 90-92). None of the

Plaintiff were accused, prosecuted, or convicted of any firearms crimes related to the incident

giving rise to the instant suit. (*See* Defendant Exhibit 9 - McGarvey Dep., p. 90-92).

## III. ARGUEMENT

### A. Standard of Review

A court may grant summary judgment only if "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if "the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is material when it "might affect the

outcome of the suit under the governing law." *Id*. In deciding the motion, the Court must "view

the record in the light most favorable to the non-moving party and draw all reasonable inferences

in that party's favor." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citing

*Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 535 (3d Cir. 2007)). This standard

means that "a district court may not make credibility determinations or engage in any weighing

of the evidence; instead, the non-moving party's evidence is to be believed, and all justifiable

inferences are to be drawn in [her] favor." *Montone v. City of Jersey City*, 709 F.3d 181, 191 (3d

Cir. 2013) (internal quotations and alterations omitted) (quoting *Marino v. Indus. Crafting Co.*,

358 F.3d 241, 247 (3d Cir. 2004)). "A motion for summary judgment is properly denied if 'a

fair-minded jury could return a verdict for the plaintiff on the evidence presented.'" *Thomas*, 749

F.3d at 222 (quoting *Anderson*, 477 U.S. at 252).

**B. Qualified Immunity**

The Defendants violated a clearly established constitutional right to be free from excess

force because they severely injured four innocent bystanders who were not alleged to have

participated in any criminal conduct. 18 troopers stormed the home, armed with significant

weaponry, and used a tremendous amount of force upon entry, which caused serious bodily

injuries to the four Plaintiffs in the home. The Defendants do not have qualified immunity for

assaulting Plaintiffs in their home on February 23, 2018.

The defense of qualified immunity is simply stated as, "government officials performing

discretionary functions generally are shielded from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For a

constitutional right to be clearly established, it "must be sufficiently clear that a reasonable

official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483

U.S. 635, 640 (1987). To meet this test, "there must be sufficient precedent at the time of the

defendant's action, factually similar to the plaintiff's allegations, to put the defendant on notice

that his or her conduct is constitutionally prohibited." *McLaughlin v. Watson*, 271 F.3d 566, 572

(3d Cir. 2001). To overcome the assertion of qualified immunity a plaintiff must sufficiently

show a violation of a clearly established constitutional right.

> Under § 1983, the use of excessive force to effect an arrest violates a
> suspect's Fourth Amendment rights. *Graham v. Connor,* 490 U.S. 386, 395–96
> (1989). Excessive force must be examined objectively since officers must use
> force that is objectively reasonable from the perspective of a reasonable

> officer. *Id.* at 396–97; *Kopec v. Tate,* 361 F.3d at 776–77. The totality of the
> circumstances inquiry set forth in *Graham* identified specific factors for courts to
> consider, including 1) "the severity of the crime", 2) the "immediate threat" posed
> by the suspect to officers or others, and 3) whether the suspect was "actively
> resisting arrest" or "evad[ing] arrest by flight". *Graham,* 490 U.S. at 396.
>
> Our Circuit has expanded this list of factors to include 1) whether the
> suspect is "violent or dangerous", 2) the "duration" of the force, 3) whether the
> force was used to make an arrest, 4) the "possibility" that the suspect is armed,
> and 5) the number of people with whom the police must contend. *Sharrar v.
> Felsing,* 128 F.3d 810, 822 (3d Cir.1997).
>
> Things not to be considered include the officer's intentions and
> motivations, be they good or bad. *Graham,* 490 U.S. at 397. Critically, the
> objective analysis cannot be skewed by 20/20 hindsight since courts must
> appreciate that officers are forced to make split-second decisions. *Id.* at 396–97.

*Patrick v. Moorman*, 536 F. App'x 255, 258–59 (3d Cir. 2013). *See also, Brown v. Cwynar*, 484

F. App'x 676, 677 (3d Cir. 2012).

Further, Plaintiff need not show an identical fact pattern in previous law to show the

Defendants are on notice about their conduct regarding excess force. As discussed *infra*, the

Third Circuit previously ruled on qualified immunity for law enforcement officers in innocent

bystander cases in *Couden v. Duffy*, 446 F.3d 483 (3d Cir. 2006). In regard to specific facts

needed for a District Court to rule on sufficient precedent in this body of law, the Third Circuit

held:

> A grant of qualified immunity may be upheld where a challenged police
> action presents an unusual legal question or "where there is 'at least some
> significant authority' that lends support" to the conduct in question, even if the
> conduct was unconstitutional. *Doe v. Groody*, 361 F.3d 232, 243 (3d Cir. 2004).
> "On the other hand, the plaintiff need not show that there is a prior decision that is
> factually identical to the case at hand in order to establish that a right was clearly
> established." *Id.*

*Couden v. Duffy*, 446 F.3d 483, 495 (3d Cir. 2006)

Therefore, the standard for assessing qualified immunity in an excessive force case is

based on *Graham*, which was extended in the Third Circuit by *Sharrar*.

In *Sharrar* the Court held the factors to consider are:

10

> [T]he severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight ... [whether] the physical force applied was of such an extent as to lead to injury ... the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

*Sharrar v. Felsing*, 128 F.3d 810, 821-822 (3d Cir.1997).

The analysis is whether a constitutional violation exists, that is, did the individual Defendant Painter use excessive force slamming an old lady, Plaintiff Ada Anglemeyer, into a wall with a three-foot ballistic shield, lifting her off the ground with the shield, and dropping her to the ground, causing her to suffer from a fractured vertebra, broken front teeth, and nerve damage to her elbow. Did the individual Defendant Wysocky use excessive force when he found Plaintiff Joseph Kluska asleep in his bed, zip tied him from the rear, lifted him up by the zip ties, dropping him to the ground from the air by the zip ties, causing him to suffer two torn shoulders. Did the individual Defendants McGarvey, Schimp, and Lopez use excessive force when they gang tackled, slapped, kicked and punched Plaintiff Jeffrey Anglemeyer, causing severe mental and emotion distress, and a serious injury to the neck. Did Defendant Benson use excessive for when he tackled Plaintiff Richard Anglemeyer to ground and tore his meniscus. The question therefore is do these acts violate the Plaintiffs' Fourth Amendment rights. And, whether a reasonable official would understand what he is doing violates the constitutional right of the Plaintiff of being free from excessive force. *Ashcroft v. al-Kidd*, 563 U.S. 731, 739 (2011).

The Third Circuit has held that defendant law enforcement officers, who were hoping to catch a fugitive wanted for drug and weapons officers at a target house, were not entitled to qualified immunity protection for their alleged use of excess force against an innocent bystander. *Couden v. Duffy*, 446 F.3d 483 (3d Cir. 2006). In *Couden*, the Defendants jumped on the

innocent bystander, pointed guns at his head, handcuffed him and sprayed him with mace. One of the Defendants was on top of the Plaintiff with their knee in Plaintiff's back. Even though the Defendants may have believed the innocent bystander was some type of intruder at the time, the Third Circuit held this use of force violated clearly settled Fourth Amendment law because the Plaintiff did not attempt to flee, resist, or was involved in any other criminal conduct.

The Third Circuit went to great lengths in *Couden* to analyze qualified immunity in innocent bystander cases.

> In deciding whether challenged conduct constitutes excessive force, a court must determine the objective "reasonableness" of the challenged conduct, considering " 'the severity of the crime at issue,  whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.' " *Carswell,* 381 F.3d at 240 (quoting *Graham,* 490 U.S. at 396). Other factors include "the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing,* 128 F.3d 810, 822 (3d Cir.1997).
>
> …
>
> Moreover, the constitutional right in question was clearly established under the qualified immunity test. The factors relevant to the excessive force analysis are well-recognized, as described above. *See Sharrar,* 128 F.3d at 822; *cf. Estate of Smith v. Marasco,* 430 F.3d 140, 150 (3d Cir.2005) (noting that a "reasonable officer would be guided by the *Sharrar* factors in determining whether to use overwhelming force in a given situation," and that "if an officer applies the *Sharrar* analysis in an unreasonable manner, he is not entitled to qualified immunity"). In this case, most of these factors—including the potential threat posed by the suspect, whether the suspect was resisting arrest, armed, or attempting to flee, and the ratio of officers to suspects—clearly suggested the use of a low level of force.

*Couden v. Duffy*, 446 F.3d 483, 496-497 (3d Cir. 2006).

Also, the First Circuit has discussed excessive force in the context of the execution of a search warrant. In *Mlodzinski v. Lewis*, 648 F.3d 24 (1st Cir. 2011), the Court held, in connection with the execution of a search warrant, several of the defendants violated the Fourth Amendment

rights of one of the Plaintiffs and were not protected by qualified immunity. "A reasonable competent officer…would not have thought that it was permissible to point an assault rifle at the head of an innocent, not threatening, and handcuffed fifteen-year-old girl for seven to ten minutes, far beyond the time it took to secure the premises and arrest and remove the only suspect." *Id.* at 38. The Court ruled the Defendants did not have qualified immunity. *Mloszinski* at 38. *See also*, *Ikerd v. Blair*, 101 F.3d 430 (5th Cir. 1996) (police did not have qualified immunity against an innocent bystander at the execution of an arrest warrant of another household member where the bystander was not under arrest, was not alleged or suspected of any crime); *Burchett v. Kiefer*, 310 F.3d 937 (6th Cir. 2002) (police did not have qualified immunity from excessive force when the locked an innocent bystander in a car on a 90-degree day with the windows rolled up while executing a search warrant, "[w]e have long recognized…that the fourth amendment permits detention using only 'the least intrusive means reasonably available' [and that] 'claims of excessive force do not necessarily require allegations of assault.'"); *McDonald by McDonald v. Haskins*, 966 F.2d 292, 295 (7th Cir. 1992) (In a search warrant case, denied qualified immunity for an officer who pointed a gun at an innocent bystander's head); *Baird v. Renbarger*, 576 F.3d 340, 344 (7th Cir. 2009) (denying qualified immunity where the defendants were accused of using excessive force when pointing a submachine gun at plaintiffs, rounded up various persons in surrounding Amish shops and warehouses and held them for over two hours until the search of the industrial park was concluded.)

In *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1053 (9th Cir. 2003), the Ninth Circuit held the defendant police officers did not have qualified immunity when the Plaintiff, who was unarmed and mentally ill should be taken to a medical facility for his own safety, was subdued and restrained in a manner with such great force that resulted in his falling

into a coma from which he never emerged. The Ninth Circuit found that the officers clearly violated settled Fourth Amendment law in their use of force. *Id.* at 1062. Even though no case in the circuit was directly on point, the officers had fair warning under the Ninth Circuit case law that their use of force was unreasonable when they crushed plaintiff to the ground, pressed their weight against his, despite his repeated cry for air, that he was cuffed, and offered no resistance. *Id.* at 1062.

Further, Plaintiffs retained a liability expert. (See Exhibit F – Joseph Polini Report and curriculum vitae). Mr. Pollini, who is a Professor of Criminal Justice at the John Jay College in New York City and a 33-year Commander on the New York City Police Department opined:

> The use of force by the Defendants in this matter in the execution of the search warrant was not objectively reasonable. Based on the information the Defendants had before they executed the search warrant, no reasonable police officer would have used the amount of force that was used in this case. The Plaintiffs in this matter posed no immediate threat to the Defendants or to any other civilians or members of law enforcement. The Defendants are not able to point to any objectively reasonable facts to justify their actions. The Defendants were on notice that the rights of citizens to be free from excess force by law enforcement was clearly established at the time they executed the warrant in this case. Further, the Defendants were on notice of the prohibition against the use of excessive force against citizens at the time they executed the search warrant.

(Exhibit F – Pollini, p. 17).

In the matter at bar, Plaintiffs are innocent bystanders, and the Defendants entered the wrong building on the parcel of land. At no point in any investigation were Plaintiffs ever accused of any wrongdoing, illegality, or dealing drugs. The parcel of land is large and all alleged narcotics transactions were from an unrelated separate building on the parcel.  The buildings are nowhere near each other on the parcel of land as evinced by Defendants' Exhibit 13, ecf# 49-16. The overhead photograph clearly shows the home in green and the garage/trailer area in red. The home is across a huge driveway and at the other end of the driveway. No

member of law enforcement ever claimed any methamphetamine was being sold or distributed inside the home. None of the Plaintiffs were charged with Resisting Arrest or Obstruction of Justice.

Plaintiffs concede lawfully registered firearms were present in their home, but the Defendants concede, a proper lawful exercise of one's Second Amendment rights is not yet a crime in Pennsylvania.

Plaintiffs were completely innocent bystanders during the execution of a warrant. Similar to *Couden*, *Mlodzinski*, *Ikerd*, *Burchett*, *McDonald*, and *Baird*, the Defendants are not entitled to qualified immunity when using force against an innocent bystander who is not committing a crime and not actively resisting law enforcement.  And, just like *Drummond*, the Defendants are not allowed to use excessive force against a subject who is not resisting in anyway.

Further, a strict interpretation of the *Graham* factors show the Defendants do not have qualified immunity for torturing these innocent people.  None of the Plaintiffs attempted to attack or aggress toward any Defendant. None of the Plaintiffs were an immediate threat to any of the Defendants. None of the Plaintiffs were suspects of any crime related to the distribution of methamphetamine. None of the Plaintiffs were actively resisting arrest, arrested for resisting arrest, or attempting to evade or flee the Defendants.

Also under the additional *Sharrar* factors the Defendants do not have qualified immunity. A reasonable officer would be guided by the *Sharrar* factors in determining whether to use overwhelming force in a given situation. *Smith v. Marasco*, 430 F.3d 140, 150 (3d Cir. 2005)(holding if an officer applies the *Sharrar* analysis in an unreasonable manner, he is not entitled to qualified immunity). Here, none of the Plaintiffs were suspects of any crime—none of the Plaintiff were charged with resisting arrest, obstruction of justice, possession with the intent

to delivery, or any gun crimes. When the Defendants entered the home, none of the Plaintiffs were being aggressive toward the Defendants or displaying any criminal activity to the Defendants; none of the Plaintiffs were charged with aggravated assault against any trooper and none of the troopers were injured by the Plaintiffs. Further, the Defendants had 43 heavily-armed SERT members present at the time of the takedown of the house while the Plaintiffs were asleep, heavily armed with deadly weapons, and with an overwhelming amount of manpower on site. Again, while the Plaintiffs had lawfully registered firearms in their home, this does not inherently make any of the Plaintiffs violent or dangerous—especially when the Defendants were in the wrong building.

Similar to *Drummond*, the Defendants here controlled and maintained the Plaintiffs without issue. Then, Defendants still felt the need to use tremendous force against the Plaintiffs. Even if the Defendants wrongly believed Plaintiffs had committed some type of crime related to a methamphetamine operation—which they had not—once the Defendants were in control of the Plaintiffs, no force was necessary. The force used by the Defendants was not objectively reasonable. Once Plaintiff Ada Anglemeyer was seen and identified by Defendant Painter, there was no need to bull-rush her into a wall. She is an older woman who is short and slight in stature. Defendant Painter did not observe her aggress toward him, possess a weapon, committing any crimes, and she made no attempts to flee. Plaintiff Joseph Kluska was asleep in his bed. Defendant Wysocky did not need to lift him up by the rear zip tie and air drop him to the ground. Defendant Wysocky did not observe him aggress toward him, commit any crimes, or attempt to flee.  Defendant Richard Anglemeyer and Jeffrey Anglemeyer has no opportunity to resist or flee, and neither were observed committing any crimes.

Here, the Plaintiffs were already subdued. Plaintiffs never resisted arrest. The conduct of Defendants is not objectively reasonable and obviously in violation of the fourth amendment.

All police know a constitutional violation exists when they use excessive force. These Defendant cannot claim they were unaware their conduct in this case was a constitutional violation. All police know a clear constitutional violation exists using excessive force, against a non-resisting, non-combative, handcuffed citizen, who is fully under the police officer's control. The question of prior knowledge of this type of constitutional violation is axiomatic. The Defendants cannot make this argument.

All factual inferences go to nonmoving party at summary judgement. The Court should note again there are genuine issues of dispute of material facts as to how this incident occurred. The Defendants shade the deposition testimony in their motion. The Defendants cannot simply rely on the testimony that is helpful to them for their own benefit.

Here, the Court must rely on the testimony of Plaintiffs to determine whether qualified immunity exists. Plaintiff Ada Anglemeyer stated she felt something hit her in the face, she flew backwards and fell flat on her back, and as a result of the attack she had a huge contusion on her hip, a fractured L2 in her upper back, nerve damage to her elbow, and two chipped font teeth. (Exhibit G - Ada Anglemeyer Deposition, p. 63, ln. 16.; p. 67, ln. 12). Plaintiff Joseph Kluska, while asleep, was zip tied behind his back, lift out of bead by the zip tie, and air dropped to the ground, causing two shoulder tears, one of which required surgical repair. (Exhibit H - Joseph Kluska Deposition, p. 39, ln. 15; p. 48, ln. 11; p. 48, ln. 11). Plaintiff Richard Anglemeyer was standing, watching the Defendants enter his home when he was hit in the face, fell to the concrete ground, and lost consciousness. (Exhibit I - Deposition of Richard Anglemeyer, p. 25, ln. 2). Plaintiff Jeffrey Anglemeyer was grabbed, thrown to the ground, held on the ground, and

repeatedly open hand slapped across his face, head and neck area. (Exhibit J - Jeffrey Anglemeyer Deposition p. 51, ln. 24; p. 62, ln. 7).

All reasonable police officers would understand such violence was excessive and in violation of an innocent bystander's constitutional rights. The role of determining facts and determining the credibility of the witnesses is for the fact finder. The Defendants do not have qualified immunity.

## C. The "Personal Involvement" Requirement – Plaintiffs Richard Anglemeyer And Jeffrey Anglemeyer

A Plaintiff in a 1983 action against an individual Defendant is required to show the Defendant is personally involved in the constitutional violation. The Defendants properly rely on *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018), the seminal case in the Third Circuit for this issue. *Jutrowski* holds:

> [T]he Supreme Court require[s] a "showing of direct responsibility" by the named defendant and to eschew any "theory of liability" in which defendants played "no affirmative part in depriving any[one] ... of any constitutional rights," *Rizzo v. Goode*, 423 U.S. 362, 376–77, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)— including theories of vicarious or respondeat superior liability, see *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); see also *Merklin v. United States*, 788 F.2d 172, 175 (3d Cir. 1986). Instead, "[b]ecause vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676, 129 S.Ct. 1937 (emphasis added). "Each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677, 129 S.Ct. 1937 (emphasis added). And, a fortiori, if entities and supervisors may not be vicariously liable under § 1983 for the constitutional violation of a given individual, neither may that individual's cohorts who happen to be in the immediate vicinity. See *Anela v. City of Wildwood*, 790 F.2d 1063, 1067–68 (3d Cir. 1986) (observing that defendants may "not be held liable under section 1983 merely because they were members of a group of which some other members were guilty of abuses" (citing *Rizzo*, 423 U.S. at 370–71, 96 S.Ct. 598) ).

*Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018)

But, *Jutrowski* specifically did not overrule *Smith v. Mensinger*, 293 F.3d 641 (3d Cir. 2002) on the grounds that where even if the Plaintiff could not see the all of the accused defendants, he alleged all of the Defendants were beating him. In *Smith* the issue was not who assaulted him, but the extent of the assault. *Id.* at 650. The extent of the excessive force used is a classic example of a disputed fact for the fact finder. *Id.* In this case, the record has established McGarvery, Schimp, and Lopez made physical contact with Plaintiff Jeffrey Anglemeyer, and the nature of the contact is corroborated by Plaintiff Jeffrey Anglemeyer. The record is also clear, Defendant Benson attacked Plaintiffs Richard Angelmeyer. Plaintiff's Richard Anglemeyer and Jeffrey Anglemeyer have been properly identified those Defendants involved in a constitutional violation. A factual dispute exists as to extent of excessive forced used against these Plaintiffs by the Defendants, and all reasonable inferences go to the nonmoving party at this stage of litigation.

Just like in *Mensinger*, Defendant McGarvey, Lopez and Schimp have been properly identified as the Defendant being personally involved and the issue of the extent of excessive force used is for the jury—not for summary judgment. Again, all reasonable factual inferences go to the non-moving party in a motion for summary judgement.

While Plaintiffs Jeffrey Anglemeyer and Richard Anglemeyer were unable to make specific identifications which defendants violently assaulted them, the standard here is, "view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014). A *prima facie* case with all reasonable inferences to the Plaintiff has been established that Defendants McGarvey, Lopez, and Schimp assaulted Jeffrey Anglemeyer; and, Defendant Benson assaulted Richard Anglemeyer.

As stated *supra* in the facts section, Defendant McGarvey admitted at his deposition that he took a middle-aged man to the ground with his shield to control him, this man was Jeffrey Anglemeyer. Defendant Schimp admitted he aided McGarvey in securing the subject, who was Jeffrey Anglemeyer. Defendant Lopez admitted a man was passed off to him to cuff, who was Jeffrey Anglemeyer. Defendant Schimp stated he saw Defendant Benson in the same room securing another subject, and Defendant Benson admitted he was in the same room and securing another male, who was Richard Anglemeyer.

Accordingly, the record has established circumstantially and as a totality of the circumstances, to a prima facie level, that Plaintiffs Richard Anglemeyer and Jeffrey Anglemeyer have identified who assaulted them.

The record establishes an identification of Defendants McGarvey, Schimp, and Lopez as the Defendants who injured Plaintiff Jeffrey Anglemeyer's neck. And, the record establishes an identification of Defendant Benson as the person who tore the knee of Plaintiff Richard Anglemeyer. To conclude otherwise would give *an inference in favor of the Defendants*. The Court would have to infer these Defendants who were undisputedly engaged with civilians, were engaged with civilians *other* than the Plaintiffs. Such an inference would be inappropriate at summary judgement and is unsupported by the record.

**D. Due Process Access To Courts**

Alternatively, much to their peril, the Defendants can no longer hide behind their *blue* masks and camouflage.  In their Second Amended Complaint, Count I, Plaintiffs pled a general violation of Plaintiff's civil rights under 42 U.S.C. § 1983. The Defendants never filed a Motion under 12(b)(6) to dismiss that claim. Plaintiffs intentionally included Count I for a general violation of their civil rights just in case the Defendants assert some type of trickery during the

course of litigation. Now the Defendants ask this Honorable Court to grant summary judgement on the theory of two of Plaintiffs not properly identifying Defendants personally involved in a constitutional violation when the defendants intentionally hid their identities. While this defense case theory is cute, the law allows the Plaintiff to proceed under a theory of Conspiracy to Deny Plaintiffs their Due Process Right to Access to Courts, because the Plaintiffs properly plead a generalized count of 1983 in their Second Amended complaint. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970); *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 161 (3d Cir. 2010); *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008); *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974).

Plaintiff's clearly plead a generalized 42 U.S.C. 1983 count:

## COUNT I - VIOLATION OF 42 U.S.C. § 1983 ALL DEFENDANTS

1. Plaintiffs alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.
2. Defendants' actions were taken under color of state law, are state actions under 42 U.S.C. §1983, and have deprived Plaintiffs of their rights, privileges, and/or immunities secured by the Constitution and laws of the United States, including her right to bodily integrity and her right to be free from illegal seizure.
3. Defendants also violated Plaintiffs' constitutional rights under the Fourth Amendment of the United States Constitution by using excessive force.
4. On information and belief, the aforesaid actions of Defendants were taken intentionally, willfully, and/or with deliberate indifference to, or reckless disregard for, the rights secured to the Plaintiffs. Defendants' actions as stated herein denied Plaintiffs' rights in violation of the United States Constitution and 42 U.S.C. § 1983.
5. Defendants' actions were a factual cause of and/or directly and proximately caused Plaintiffs' substantial damages and harm.

In the Third Circuit, to survive summary judgement on a conspiracy theory a plaintiff must show the officers reached an understanding to deprive them of their constitutional rights.

One of those right is the constitutional right of access to courts. When law enforcement officers conspire to cover up constitutional violations, the Plaintiff has been denied his constitutional right to access to courts. *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184-85 (3d Cir. 2009). A conspiracy of silence behind the blue wall is enough to survive summary judgement. *Vasquez v. Hernandez*, 60 F.3d 325, 328-29 (7th Cir. 1995). "Courts have found that concealing a constitutional violation, including use of excessive force, does not amount to a separate constitutional violation unless the victim of the concealment was deprived of his right of access to the courts." *Swiggett v. Upper Merion Twp.*, No. 08-2604, 2008 WL 4916039, at 4 (E.D. Pa. Nov. 17, 2008).

However, the Plaintiff must establish some factual basis to support the existence of the conspiracy: some type of agreement on group action. *Kost v. Kozakiewiecz*, 1 F.3d 176, 185 (3d Cir. 1993). Plaintiffs can prove the existence of this agreement through circumstantial evidence. *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008). And, whether there is a meeting of the minds of the defendants to infer from the facts is a determination for the jury. *Kedra v. Shroewter*, 876 F.3d 424, 444 (3d Cir. 2017); *See also, Anderson*, 477 U.S. at 249.

But, Plaintiffs are not permitted to make a blanket assertment of a conspiracy to deprive them of their due process rights of access to courts. *Monroe*, 536 F.3d at 205. Material omissions in police reports can be enough for a jury to conclude the conspiracy existed. *Bell v. City of Milwaukee*, 746 F.2d 1205, 1256 (7th Cir. 1984), rev'd on other grounds by *Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005).

Mr. Pollini also opined on this topic:

Moreover, the Pennsylvania State Police has intentionally created a policy and procedure regarding the SERT unit, of not providing any identification or identifying markers when the SERT unit executes a warrant, by wearing face coverings and not having their names and badge numbers embroidered onto their

> uniforms. Further, the Pennsylvania State Police have intentionally created a policy of intentionally not arming the SERT unit with body cameras and having no explanation for the policy. These polices are a systematic defect and violate proper, accepted and standard police practice and procedures.

(See Plaintiffs' Exhibit F, Pollini Report, p. 17).

Here, Defendants McGarvey, Schimp, Benson and Lopez all admitted in their reports and/or depositions they made physical contact with civilians in the house, all of them had their faces covered and wore a uniform with no name or badge number, and their employer admitted in a sworn declaration in lieu of a 30(b)(6) witness the Defendants intentionally conceal their identity and have no explanation for the practice and policy.

Plaintiffs have included a "catch all" 42 U.S.C. § 1983 claim in their pleadings for deprivation of constitutional rights. Plaintiffs have shown the existence of a conspiracy of the Defendants to conceal their identities when committing excessive force. Plaintiffs Richard Anglemeyer and Jeffrey Anglemeyer should be allowed to proceed to trial on a claim of Conspiracy to violate their due process rights by depriving them of access to courts even if this Court concludes they have not properly identified the Defendants. Here, the Defendants intentionally covered their faces and bodies at the time of their conspiracy. The Defendants intentional had no name or badge number on the outside of their clothing. Their employer had no 30(b)(6) witness available to explain this practice; instead offering "this is way it's always done." The only way to put an end to these shenanigans is to let a jury hear the evidence, and hold the defendants accountable for their actions—to use the 7th Amendment to force the Defendants to accept responsibility for their actions. Otherwise the tactics of this posse will continue to pervade our communities.

## IV. CONCLUSION

The Defendants are personally involved in a constitutional violation. The Defendants' use of excessive force was a constitutional violation. The Defendants were well aware their conduct amounted to a constitutional violation. The acts of the Defendants were the cause of Plaintiffs' injuries.  The Defendants acted with recklessness or callous indifference to the Plaintiffs' federally protected rights.

Defendants' motion should be denied.

RESPECTFULLY SUBMITTED,

May 10, 2021                         /s/ Brian J. Zeiger, Esquire
DATE                                 BRIAN J. ZEIGER, ESQ.
                                     LEVIN & ZEIGER, LLP
                                     1500 JFK BLVD STE 620
                                     PHILADELPHIA, PA 19102
                                     215-825-5183
                                     PA Bar Id. No. 87063

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ADA ANGLEMEYER, et al.        :     Civil Action No. 19-3714
                           :
           v.            :     Jury Trial Demanded
                           :
NORTHAMPTON COUNTY, et al.    :
                           :

## CERTIFICATE OF SERVICE

Plaintiffs' counsel hereby certifies opposing counsel has been served with the foregoing via email and this Court's ecf.


                              RESPECTFULLY SUBMITTED,


May 10, 2021               /s/ Brian J. Zeiger, Esquire
DATE                     BRIAN J. ZEIGER, ESQ.
                             LEVIN & ZEIGER, LLP
                             1500 JFK BLVD STE 620
                             PHILADELPHIA, PA 19102
                             215-825-5183
                             PA Bar Id. No. 87063

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ADA ANGLEMEYER, et al. | : | Civil Action No. 19-3714 |
| | : | |
| v. | : | Jury Trial Demanded |
| | : | |
| NORTHAMPTON COUNTY, et al. | : | |
| | : | |

**PLAINTIFFS' STATEMENT OF MATERIAL UNDISPUTED FACTS**

Plaintiffs, for the purpose of responding to Defendants' Motion for Summary Judgment,

consistent with the Court's procedures, avers the following:

**Statement of Plaintiff as to whether they accept or reject the facts of the moving party, in the same numeric order:**

The Property and Residence
1-4. Accepted.

SERT Assistance Request
5-13. Accepted

SERT Briefing and Approach to Property
14-17. Accepted.
18. Accepted in part and rejected in part. Defendants offer opinion evidence in parts of this paragraph, which is against the standard for Summary Judgement.
19-26. Accepted.
27. This paragraph was left blank by Defendants.
28-30. Accepted.

Lower Levin (4-Side) Entry
31-138. Accepted.

Conclusion of SERT Involvement
139-144. Accepted.

Alleged Injuries to Plaintiffs
145.-148. Accepted.

**Plaintiffs' additional disputed facts in consecutive numbered paragraphs.**

149. Defendants intentionally conspired to hide their face and identification.

Plaintiff Ada Anglemeyer could not see any of the faces of any members of SERT:

>  Q. Okay. First of all, who was this? Was this one of the –
>  A. I couldn't say who it was. It was just police and they were in these uniforms. Can't recognize them.
>  Q. Okay. This person you were speaking with, this one person, was there anything distinctive about him, like a beard or --
>  A. No.
>  Q. It's my understanding they were wearing like helmets and things like that --
>  A. Yes.
>  Q. -- on a lot of their heads?
>  A. Correct.
>  (Ada Anglemeyer Deposition, p. 70, ln. 16).

Plaintiff Joseph Kluska could not see any of the faces of any members of SERT.

>  Q. Two, okay. And could you see their faces or were they wearing -- what were they wearing?
>  A. They were wearing fatigues and helmets and everything, but, yeah, I don't -- I couldn't see their faces at first. Maybe a little bit afterwards when things settled down a little bit.
>  (Joseph Kluska Deposition, p. 43. ln. 23).

Declaration of Pennsylvania State Police in Response to Plaintiffs' Rule 30(b)(6) Notice to Pennsylvania State Police.

>  1. The Pennsylvania State Police's ("PSP") Special Emergency Response Team ("SERT") wear uniforms for SERT operation that do not bear the individual's name or badge number.
>  2. PSP is unaware of SERT uniforms ever containing the individual's name or badge number.
>  3. PSP is unaware of any policy or regulation, current or archived, that states whether the SERT uniform includes/does not include the individual's name or badge number.
>  4. PSP is unaware of any time that the issue of name or badge number appearing on the SERT uniform was formally considered or discussed.

Defendant McGarvey's Admission that the SERT team intentionally conceals their identity.

>  Q. Okay.  And, by the way, was your face covered?
>  A. Yes.  I wear the helmet obviously, the
>  ear muffs.  I usually have glasses and then I have a neck wrap that -- wrapped around a

piece of Kevlar that I wear on my -- on my neck.

Q. Okay.  Did you ever take any of that off

at any point during this operation?

A. On the scene, no.

Q. Did you ever identify yourself to any of the occupants of the home?

A. Yes.

Q. When was that?

A. Upon entry.

Q. What did you say?

A. I say state police warrant service.

Q. I understand that, Corporal.  I mean like once everyone is in zip ties or cuffs and the scene is secured, do you say my name is Corporal  McGarvey?

A. I did not.

Q. Does your outfit that you wear say Corporal McGarvey on the outside anywhere?

A. It does not.

Q. Why is that?

A. I couldn't tell you.

Q. Have you ever asked anyone that you want your name on the outside of your uniform?

A. I have not.

Q. Do you wear a badge?

A. I do not.

Q. Do you have a badge number on the outside of your uniform?

A. It does not.

Q. So, let me give you a hypothetical.  If you did something wrong on the job and someone wanted to complain about you, how could they do it  then?

…

A. Piecing it together.

Q. Say it again?

A. I said piecing it together just with all the information.

Q. How would they piece it together?

A. I guess kind of like what we're doing now, like talking to all the people that were involved and just going by what was said.

Q. Is there any other way that you're aware of?

A. A way to identify?

Q. Yes.

A. Not that I would know of.

(McGarvey Deposition, p. 33, ln. 14).

150. Deposition of Ada Anglemeyer

At the time of the entry of SERT, Ada Anglemeyer was unaware why SERT was in her home,

Q. Okay. So you're saying that you had no advanced notice that the police were coming?

A. Pardon me?

Q. You had no advanced notice that the police were coming that morning?

3

A. No. I didn't know.
(Ada Anglemeyer Deposition, p. 89, ln. 7).

And I just felt something hard hit me in the face, and I just flew backwards and flat on my back, and I just screamed, because I was in such pain. And I remember my husband yelling, you could cripple her, call an ambulance, she just had surgery. And I said, they broke my teeth off. And I was just laying there. I couldn't move. And I don't know how long I laid there. It seemed like forever, but I just couldn't move. I just laid there, and eventually the ambulance came and took me to the hospital.

Well, I had a complete black and blue hip and a big contusion on my hip the size of a baseball, and I must have hit my head, because I had trouble with my ears and dizziness, and of course my back, it fractured the L2 in my upper back, and my elbows hit the floor really hard, because I had to have surgery in my arm. I kept getting shocks down my hand, and my arm still ain't right. It's numb.
(Ada Anglemeyer Deposition, p. 67, ln. 12.)

Ada Anglemeyer was not given any commands by SERT,

Q. Okay. So you didn't hear anyone giving you commands to do anything?
A. No.
(Ada Anglemeyer Deposition, p. 67, ln. 12.)

SERT falsely accused Ada Anglemeyer of being involved with drugs:

A. No. When the police -- they did say to me, well, where's the drugs? I said, I don't have any drugs.
Q. This is while you're on the ground?
A. Yes. This is while I'm on the ground. I said, I don't have any drugs. The only thing I have is my medicine.
(Ada Anglemeyer Deposition, p. 70, ln. 16).

151. Deposition of Joseph Kluska

Joseph Kluska was unaware Mark Anglemeyer was alleged to have sold methamphetamine from another building on the parcel of land.

Q. So at some point you became aware
that there were allegations that he had sold meth to a confidential informant?
A. Yeah. When they busted into my room and ripped down my bed, then I became aware of
it.
Q. Okay. So before then, you had never
had any reason to suspect that he was -- A. No.
Q. -- selling meth?

4

A. No.
Q. Okay. So that surprised you, that
allegation? Is it fair to say that?
A. Yeah.
(Jospeh Kluska Deposition, p. 28, ln. 5).

Joseph Kluska was asleep in bed when SERT came into his bedroom, ziptied him from behind,

They busted in through the outside door into my bedroom and literally scared the bejesus
out of me, and one of them jumped on my bed, had me roll over and put my hands up,
which I did, and then they cuffed me. And he had a gun in his hand and cuffed me behind
my back, and then after cuffing me, I was like, what the hell is going on. I was startled.
Cuffed me behind my back, at which time the officer just kept telling me to shut the F up,
shut the F up, and he grabbed the zip tie where he cuffed me at behind my back, lifted me
up in the air and slammed me on the floor, and I'm still like half asleep, not knowing
what's going on.

(Joseph Kluska Deposition, p. 39, ln. 15).

Joseph Kluska felt the Defendant lift him up from the zip tied cuffs, from the rear, tearing both of
his shoulders.

A. Yeah. Well, I was laying on my back when he jumped up on my bed. I was looking at
him, and he told me to roll over, and that's
when I rolled over.
Q. Okay.
A. Roll over, put your fucking hands
up.
I rolled over, put my hands up. So
I seen him standing on my bed with his feet. Q. Okay. All right. So you get
handcuffed by the tall white guy and then what exactly happens next?
A. I just get lifted in the air, and I scream, my fucking shoulders, my shoulders, and
slammed me down on the ground and like I just -- instantly just my shoulders just were
in so much pain, and I was asking him to take the cuffs off. He refused to. And I'm like,
man, my shoulders, you don't understand, you just ripped my shoulders out, you ripped
my shoulders out.
Shut up, shut up, shut up.
Q. And who was yelling shut up? Were
they both yelling or just one of them? A. No. The white guy was.

(Joseph Kluska Deposition, p. 48, ln. 11).

…

A. Instantly. Instantly. I felt it --

I mean, if you can imagine being ripped up out of your freaking bed and slammed on the floor. I'm sorry about my language, but I felt it instantly and I said it instantly, my shoulders. What the fuck? My shoulders. And I was swearing too. What the F. My shoulders, my shoulders. You just ripped my shoulders out.

Q. Yeah.

A. And he kept telling me to shut up, just shut up.

Q. Okay. So you're saying that from the moment you basically hit the floor, you were complaining about the shoulders?

A. Absolutely.

Q. And do you know whether or not they got further injured when you were moved from the floor to the chair?

A. Yeah. I would say yeah, because he picked me up the same way. I was still cuffed behind my back. It wasn't like he helped me up. He ripped me up.

(Joseph Kluska Deposition, p. 48, ln. 11).

152. Deposition of Richard Anglemeyer

A. Okay. I'm standing by the fireplace, and then people were running round, you know, the cops, now that I know they're cops. They were running all around, and I just stood at the fireplace. And then a cop come in, two cops come in, stood in front of me with a bright light and, you know, moved it back and forth like this here (indicating), and then I got blinded. I couldn't follow it no more. And the next thing I know, I got hit, you know, in the face and stuff.

Q. Okay.

A. And I felt -- and like at the throat here, and then I knew I was going down, and I went down and hit the concrete, and that's all I can remember for a while.

(Deposition of Richard Anglemeyer, p. 25, ln. 2).

153. Deposition of Jeffrey Anglemeyer

He yelled, get down, and he grabbed -- he like clothes-lined me behind my head and threw me down on my hands and knees.

And when I said that, he said, shut up, and he took his boot on the back of my neck and he slammed me to the floor on my knees to flat on my thing, and that's when he hurt my neck.

He slapped me once in the jaw, and that's when I felt the shooting pain in my neck, and I dumped my head down and then he was punching me with open hands. These were not punches. They were open hands across the top of my head.

(Jeffrey Anglemeyer Deposition p. 51, ln. 24).

He slapped me once in the jaw, and that's when I felt the shooting pain in my neck, and I dumped my head down and then he was punching me with open hands. These were not punches. They were open hands across the top of my head.

(Jeffrey Anglemeyer Deposition p. 62, ln. 7).

154. Defendant's Motion for Summary Judgement Exhibits, ecf # 49-12, Exhibit 9, Defendant McGarvey's Deposition

Q. Understood. But did you make physical contact with a human being on that day during that job?
A. I did.
Q. Okay. And whomever that person is, you don't -- you don't know their name?
A. I do not.
(Defendant McGarvery's Deposition p. 8 ln. 12)

A. It was an adult aged male that I ·remember during the incident.
Q. Not a senior citizen?
A. No.

(McGarvey Dep., p. 9, ln. 1.)

Q. Do you think the male could have been in their forties that you had contact with?
A. When you use the term senior citizen, I'm like no. But -- but I don't know, older male, like not senior citizen age.

(McGarvey Dep., p. 26, ln. 12.)


155. Defendant's Motion for Summary Judgement Exhibits, ecf # 49-28, Exhibit 25, Defendant Lopez's Callout Report.

 "Upon arrival on scene, I deployed with my team to the 4 side of the residence. Upon announcement given, I made entry by performing a brake and rake to the 4 side patio door. On entry, I assisted in clearing the residence, 1st floor, and secured flex cuffs 1 W/N/M in the 1st floor living room.".

156. Defendant's Motion for Summary Judgement Exhibits, ecf # 49-24, Exhibit 21, Defendant Benson's Callout Report.

"Upon arrival announcements were made prior to the sliding glass door being breached. When entry was made I observed a W/N-M subject and commands were given to him. At which point he turned around and began walking into an adjacent room. As we made our way through I encountered another W/N-M subject, who did not comply with commands to get on the ground. I assisted with securing that W/N-M and remained with that subject while the rest of the residence was cleared by the team."

7

157. Defendant's Motion for Summary Judgement Exhibits, ecf # 49-31, Exhibit 28, Defendant Schimp's Callout Report

> "Upon announcements the residence was not surrendered and entry was made. Ask [sic] we entered the structure behind Tpr. Quinton PAINTER and Tpr. Mark BENSON a male was encountered. Commands were given for him to stop and get on the ground. He refused that order and turned around and walked around a corner into the next room. Myself and Tpr. MCGARVEY followed him into that room where Tpr. MCGARVEY had to physical take him to the ground while Tpr. BENSON was also dealing with another male who was not complying with commands."

<div style="margin-left:40%">

RESPECTFULLY SUBMITTED,

</div>

May 10, 2021                                        /s/ Brian J. Zeiger, Esquire
DATE                                                    BRIAN J. ZEIGER, ESQ.
                                                            **LEVIN & ZEIGER, LLP**
                                                            1500 JFK BLVD STE 620
                                                            PHILADELPHIA, PA 19102
                                                            215-825-5183
                                                            PA Bar Id. No. 87063